CONCURRING OPINION

DONLON, Judge: I concur in the result.

(C.D. 2539)

F. B. VANDEGRIFT & CO., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided June 4, 1965)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Harold L. Grossman* and *Sheila N. Ziff*, trial attorneys), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: Molochite is the trade name of a calcined clay, product of Great Britain. It comes in various grade or sieve sizes. It was classified by the collector as an earthy substance, not decorated, not specially provided for, and was charged as such with duty under modified paragraph 214 at 15 per centum ad valorem. (T.D. 51802.)

There are two claims in the protest, viz, for classification under modified paragraph 207, either as wrought or manufactured clay, not

specially provided for, with duty at $1 per ton (T.D. 52739; T.D. 52820); or as china clay, with duty at $1.06 per ton (T.D. 54108).

The record consists of certain exhibits, later more particularly discussed; the testimony of three witnesses for plaintiff; and the responses to certain interrogatories and cross-interrogatories propounded in Great Britain, with the exhibits incorporated therein.

Defendant noted objection to certain of the responses to interrogatories and cross-interrogatories. Therefore, we first rule on those objections.

Defendant objects to the responses of Dr. Norman O. Clark to direct interrogatories 6(d), 7(d), 9(a), and 10(c) and to cross-interrogatory 8, on the ground that, in each case, the answer of the witness is not responsive to the question propounded.

The subparagraph questions and answers to which defendant objected are not easily understood apart from the questions and answers with which they are grouped. In order to present adequately our ruling on the objections, we quote from the record questions and answers, as follows:

Direct interrogatories:

6. [Q.] (a) Are you familiar with the merchandise that is identified by English Clays Lovering Pochin & Co. Ltd. as "No. 6 Molochite", "No. 9 Molochite", "No. 10 Molochite", "No. 30 Molochite", and "No. 30/60 Molochite" (hereinafter referred to as "said Molochite")? (b) If your answer is in the affirmative, please explain the nature of your familiarity with said Molochite; (c) how, if at all, you know about the differences, if any, that exist between the specified items of said Molochite; and (d) what such differences are, if any.

[A.] (a) Yes. (b) I was responsible for the technical specification for its manufacture. (c) Because I am familiar with the method of manufacturing all these materials. (d) The material is china clay calcined to a high temperature to improve its value as a refractory material and is graded by sieving into a number of particle sizes. The various grades referred to relate to the sieve gradings as shown in the table submitted as Exhibit A.

7. [Q.] (a) Do you *personally know* (a) what raw materials were used to produce said Molochite, and (b) the nature of the properties and physical characteristics, and (c) the chemical composition of such raw materials? (d) If your answer is in the affirmative please state how you personally know each of these three facts. [Italics quoted.]

[A.] (a) Yes. (b) Yes. (c) Yes. (d) The raw material for the manufacture of Molochite is specifically English china clay which is an aluminum silicate of established composition of the mineral kaolinite.

9. [Q.] (a) Do you *personaly know* if the natural clays or other raw materials specified in Question No. 8 above, are processed or manufactured in any way before they become said Molochite? (b) If your answer is in the affirmative please state how you obtained this information. [Italics quoted.]

[A.] (a) China clay is extracted from a geological formation and refined by various purifying methods to produce the raw material known as china clay in commerce. This identical raw material is the only material used for the manufacture of Molochite. No further refining beyond that applied to the pro-

duction of commercial china clay as a ceramic raw material is applied for this purpose. (b) By personal knowledge of the processes.

10. [Q.] (a) Please explain step-by-step each process or manufacturing operation given to the natural clays or other raw materials specified in Question No. 8 above, to bring them into the condition as found in said Molochite explaining differences if any exist. (b) If a washing operation is performed state the nature thereof. (c) If a refining operation is employed state how the refining is performed, what is refined, and what, if anything, is lost during such refining. (d) If a drying operation is performed state how this is done. (e) If a calcining operation takes place state how this is done, and the kind of kiln used. (f) If the material is crushed or graded, explain how this is done.

[A.] (a) English china clay is found associated with decomposed granite as it derives from the feldspar originally present in that granite. The process of refining china clay essentially consists of separating the mineral kaolinite from the other minerals associated with it. The secondary process of Molochite manufacture consists essentially of calcining this purified kaolinite to form a calcine clay. These processes are described in detail in answer to the questions below. (b) Washing takes place in open-cast mines where impurities are separated successively in the form of large stones, sand and very fine mineral impurities. The whole process is carried on in an aqueous medium. (c) Refining is essentially a separation of one mineral from another by a process which exploits the difference in particle sizes of the various minerals. For instance, if the separation by a sedimentation procedure is carried out to separate at 20 michromes, the material below this size is a commercially pure china clay and is the basic material for the Molochite process. The material rejected is essentially coarse kaolinite, fine-particle-size sand, mica and tourmaline. (d) Drying is effected after a preliminary of filter pressing to remove the large bulk of water, in a rotary kiln, which reduces the moisture content from 30 per cent in the filter cake to about 8 per cent in the dry clay. After the preliminary of roughly forming the dry clay into blocks by a pressing process, the clay is fired in a continuously tunnelled kiln to a temperature of 1500° Centigrade. (f) The calcined rough blocks are crushed by machinery and the resulting material graded by sieving.

Cross-interrogatory:

8. Q. Please explain your answer to Interrogatory No. 6.

A. Molochite is produced by simple calcination of commercial china clay and is itself the raw material for the manufacture of a wide range of refractory and ceramic products.

Question 6, of the cross-interrogatories, to which question 8 refers, with the answer to question 6, is as follows:

6. Q. Is the manufactured Molochite a calcined clay?

A. Yes.

As to interrogatory 6(d), defendant objects that the answer is not responsive to an inquiry as to what are the differences between clays designated as Molochite numbers 6, 9, 10, 30, and 30/60. The answer shows that Molochite is "graded by sieving into a number of particle sizes. The various grades referred to relate to the sieve gradings as shown in the table submitted as Exhibit A." In exhibit A, attached to Dr. Clark's responses, we find grade numbers 6, 9, 10, and 30, with

size analyses. We do not find number 30/60, of which there are 20 bags in the entry before us. However, this does not make the answer unresponsive. The reference by Dr. Clark to grade numbers appears to be illustrative of the size of sieve gradings, which is not argued in the briefs as a matter of controversy or otherwise shown to be such. The answer is responsive.

If the objection is as to that part of the response which states what the material is, there is no conflict between the response to that question and the response to direct interrogatory 8, to which there is no objection. In that respect, the objection lacks merit.

Objection that the response to interrogatory 6(d) is not responsive is overruled.

As to interrogatory 7(d), the question was as to how the witness personally knows what raw materials were used to produce Molochite, how he knows what the nature of the properties and physical characteristics are, and how he knows the chemical composition of the raw materials.

The answer, stating what the raw material is, is not responsive to the inquiry as to *how* he knows the things as to which he stated that he did personally know. That the witness may understandably have been confused by this interrogatory, does not justify a nonresponsive answer.

The objection to the answer to interrogatory 7(d) is sustained. That answer is stricken from the record.

As to interrogatory 9(a), the response is wholly unresponsive. The objection is sustained, and that response is stricken.

In interrogatory 10(a), the witness was not asked to tell whether there is a refining process. In responding to interrogatory 9, he had already testified that the clay is refined. In interrogatory 10(c), he describes what the refining process is. The answer is responsive. The objection is overruled.

As to cross-interrogatory 8, the witness had testified, in his response to cross-interrogatory 6, that the manufactured Molochite is a calcined clay. He was then asked to explain his answer. He responded by telling how Molochite is produced and how it is used.

This is not unresponsive. The objection is overruled.

Having ruled on defendant's objections to Dr. Clark's testimony, we proceed to consideration of the issues in this litigation on the record that is before us after giving effect to our rulings on those objections.

There is no doubt that Molochite is an earthy or mineral substance, wholly or partly manufactured. The issue which plaintiff urges is that Molochite is more particularly enumerated under one of the clay provisions.

In *C. J. Tower & Sons* v. *United States*, 24 CCPA 332, T.D. 48769, certain bauxite ore concentrates were held to be properly classified as

refined bauxite, rather than as earthy or mineral substances. The basis of the decision was that the provision for refined bauxite is the more specific provision.

The tariff rule that a more specific enumeration shall prevail over a general enumeration was stated by our appeals court in *Sandoz Chemical Works, Inc.* v. *United States*, 43 CCPA 152, C.A.D. 623, as follows:

* * * The substance of the rule of relative specificity is that where an item appears to be properly classifiable under different paragraphs, the proper classification is under the paragraph which describes the item more specifically. [P. 158.]

On the record before us, we hold that Molochite is a clay.

However, the two provisions under which plaintiff makes its alternative claims are, first, as china clay and, second, as clays, wrought or manufactured. There is no such provision in either of those enumerations as is contained in the paragraph 214 enumeration, of "articles, wares, and materials" of earthy or mineral substances, under which the collector classified Molochite. That paragraph, in relevant part, is as follows:

[PAR. 214, as modified by the General Agreement on Tariffs and Trade, T.D. 51802.] Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not * * *:
　If not decorated in any manner:
*　　　*　　　*　　　*　　　*　　　*　　　*
　Other_____ 15% ad val.

While clay is, on the record here, the raw material of Molochite, is Molochite a clay that has been *manufactured*, or is it an article, ware, or material made of clay? That is to say, is it a *manufacture* of clay, or is it clay, manufactured or unmanufactured?

The process of making Molochite and its functional properties were described in considerable detail by witnesses who testified for plaintiff.

Dr. Norman O. Clark, a doctor of philosophy in science, specializing in ceramic chemistry, is research manager and director of English Clays Lovering Pochin & Co., Ltd. Dr. Clark said that it was he who developed the formula and process for making Molochite.

Mr. Thomas E. Bonstein is chemist and technical salesman for Paper Makers Importing Co., Inc., the importer for whom plaintiff here acts as customs broker.

Dr. Malcolm G. McLarem is an assistant professor in the School of Ceramics at Rutgers University and holds the degree of doctor of philosophy in ceramics. He has done research for the importers of Molochite.

Dr. John H. Koenig is professor and director of the School of Ceramics at Rutgers University, and director also of the New Jersey Ceramic Research Station. He specializes in ceramics. His degrees include a doctorate in ceramic engineering.

From their testimony, the following facts are shown as to the processing of Molochite.

Clay is first hosed down from granite formations and is washed in open-cast mines to remove impurities, such as sand, coarse particles of mica, quartz, tourmaline, and feldspathic material. This clay, in water suspension, is carried to vats and is refined in order to remove additional impurities, such as the very finest mica, quartz, sand, and tourmaline. Every effort is made to remove mica and tourmaline, because they contain ferrous impurities which cause discolorations and reduce the life of refractories that are used in blast furnaces.

After such processing, when pure grade china clay has been obtained, the clay is fed into filter presses in order to remove the large bulk of water then in the clay. The moisture content is reduced in the filter presses to 30 percent. At this point, the material is a plastic mass, in filter press cake form. The filter cakes are next disintegrated, and further water is removed by running the material through a rotary kiln. This reduces the moisture content to a percentage that is between 8 and 15 percent of the mass.

The dry clay, thus obtained, is then pressed into blocks, or bricks, which are loaded on kiln cars and sent through a continuous tunnel kiln, fired to a temperature of 1500° centigrade. In the course of this kilning operation, the remainder of the free water and the chemically combined water in the clay are removed. At a temperature of 650°, the mineral kaolinite converts into an amorphous mixture of alumina and silica. At a higher temperature, approaching the final 1500°, all the alumina in the composition is converted to the mineral mullite. On removal from the kiln, the rough blocks or bricks are crushed by machinery. The resulting crushed material is graded by sieving it accordingly to size, such as the sizes stated in the exhibits of record.

Plaintiff's witness, Dr. Clark, described the resulting product as china clay that has been calcined to a high temperature in order to improve its value as a refractory material. He said the most valuable change that occurs, as a result of the calcination process, is a change in what he called dimensional stability. He explained that when china clay is subjected to ceramic firing, its dimensions change substantially; but when the calcined clay, Molochite, is subjected to ceramic firing, its dimensions are only slightly affected. These Molochite properties of stabilized dimensions are properties which natural china clay does not have, and they are industrially desirable properties so as to prevent excessive shrinkage on refiring, or the warpage of the finished product. Molochite has been accepted by the

ceramic industry because it has consistency in purity and grading; it is used with other materials to control shrinkage and to get a desired final composition for firing. Molochite represents an advance in ceramic technology, in that it is a more uniform material, with stabilized properties, that can be better formulated. This cuts down production losses, resulting in better products with longer life periods. It is as uniform a clay as is now industrially available, in regard to physical properties.

However, Molochite cannot be molded, whereas natural china clay has that property. By calcining clay, some plasticity is eliminated. Calcination is an old art; it was used in Germany in 1850 to deliberately reduce shrinkages in large high-clay-content bodies. More recently, calcined clays have been produced by commercial suppliers who can exert more control and arrive at the same stability, which is characteristic of this type of clay, Molochite.

As to the uses of Molochite, the testimony is that there are two uses. One is in what are called cast bodies. The other is in what are called dry pressed bodies.

When used in cast bodies, Molochite is mixed with other clays, the mixture is shaped with water and is cast, and then fired to produce a ceramic product.

When used in dry pressed bodies, Molochite is blended with other materials and passed through an hydraulic press under pressure of 5 to 20 tons. The pressed material is formed by use of a metallic die, and then fired to produce a ceramic product.

While in the finer grades Molochite might be used by the paper industry, the chief use is in manufacture of a great variety of ceramic products, such as furniture, porous filters, couplings, tubing, insulators, and various heating elements, in all of which it is desirable that shrinkage be controlled. Use of natural or raw china clay would result in products inferior with respect to shrinkage.

Molochite is a trade name for one calcined clay. Other trade names for such clay, made by other manufacturers, include Ajax and Calamo. These are competitive with Molochite. While Molochite is sold as a kind of clay, it would not be a good delivery on an order for natural or raw clay, or other specified raw material.

The following definitions from "The Standard Definitions of Material Relating to Ceramic Whitewares and Related Products," prepared by the American Society for Testing Materials, were read into the record:

Clay.—A naturally occurring mineral aggregate, in crude or purified form consisting essentially of hydrous silicates of alumina. Clay normally is plastic when sufficiently wetted, rigid when dried en masse, and vitrified when fired to a sufficiently high temperature.

Calcine.—A ceramic material or mixture fired to less than fusion for use as a constituent in a ceramic composition.

Dr. Koenig explained that these definitions were arrived at by a committee consisting of close to a hundred experts in the ceramic field, representing not only producers of clay, but also users and certain general interest members, such as scientists in universities, and members of governmental agencies, including the Tariff Commission. The above definitions were accepted by witnesses testifying here.

Mr. Bonstein pointed out that while clay is normally plastic, there is a range of plasticity in clays. He said that he did not know, however, of a definition that stated that clay must be plastic.

The witnesses regarded this merchandise as a type of clay, a calcined clay.

Clay is mineralogically a hydrous aluminum silicate. Molochite is hydrous aluminum silicate from which water has been removed by the firing process. Mr. Bonstein testified that Molochite is only the clay itself, that has been fired, and that it comes out of the firing with a resultant stability of properties.

Dr. McLarem said that he regarded Molochite as a calcined clay, still a raw material, to be used in the production of some other end product, and that it is never used by itself.

Dr. Koenig called it a relatively pure refractory clay, having the essentials of clay. He said that he deemed it a raw material, not a finished product, and that it is used as an ingredient in a ceramic body or refractory composition.

The witnesses did not regard Molochite as a raw or natural clay, but as a clay that had been processed to bring out some desirable properties. Dr. Koenig said it was a very good example of clay, manufactured, since "you have gone beyond just exacting the clay minerals as in the beneficiation of clay deposits, as has been described, and you have heated the clay. You have processed it further by subjecting it to a manufacturing operation." (R. 55–56.) It was also pointed out that the processing had not been carried out so far as to fuse or vitrify the material. According to the witnesses, it is a raw refractory material, to be used with other raw materials to make a final manufactured vitrified or ceramic product.

It was explained that the material was formed into blocks or bricks before being placed in the kiln solely for convenience of calcining and in order to grade the material by processes of grinding and sieving. The bricks can be stacked on the kiln cars in such a way that ventilation is let through the stacks, to permit uniform firing of the product. The brick is not a commercial product. It is crushed at the end of the calcining operation.

However, there are clay bricks which, as bricks, are not regarded as still being clay. They are a mixture of clay with other materials, such as feldspars, flints, and other fluxes or ingredients that are used to give the brick desired properties. When such bricks are fired,

they lose all their properties as clay and become a manufactured product. The process of producing such bricks is more of a fluxing operation, involving glass formation, so that the commercial clay brick is essentially different from the raw materials.

Molochite bricks, however, are not a blended product. Molochite is a pure clay, having a high refractory capacity. Even though it has been fired, it is still clay in that the firing process has not been carried to the point of vitrification.

The issue here is whether Molochite is a clay, manufactured, as plaintiff claims, or a manufacture of clay, as the Government contends. The facts of record pertinent to our decision have been recited.

Defendant cites *H. A. Robinson & Co.* v. *United States*, 59 Treas. Dec. 1105, T.D. 44867, in support of its contention. The merchandise there was described in the invoices as burnt clay for tennis courts. It was classified by the collector as an article composed in chief value of earthy or mineral substances. The claim was that it was properly dutiable as clay. The record established that the merchandise was made from a mixture of dice or boulder clay and short clay. These materials were ground and mixed, then mixed with water, rolled, compressed, cut to convenient sizes for handling, placed in a continuous or tunnel kiln, and there subjected to a slow process of heat for a period of 3 weeks. The purpose of the heat treatment was to bring the material to such a state that, when used for tennis court surfaces, it would not weather back to its natural state of clay in contact with moisture. It was ground and screened in order to get the required thickness for tennis court surfaces. The only purpose of the product was for surfacing tennis courts. The witnesses testified that, after burning, the material was no longer clay. One witness pointed out that clay has the property of being shaped with water, but that the burnt clay does not have that property.

The court concluded that the merchandise was not clay, manufactured, but had become a manufacture of clay; that it was a new product with a distinctive use, which had been manufactured from clay and was not still clay, citing *Wm. A. Foster & Co.* v. *United States*, 29 Treas. Dec. 561, T.D. 35915, in which appeal was dismissed, 7 Ct. Cust. Appls. 503.

In the *Foster* case, merchandise invoiced as brick rubble for tennis courts was held to be a manufacture of clay. The court there stated that the substance from which the commodity was made was burned, as a brick is burned, and, therefore, was not clay but a new and different material.

These cases were distinguished in *J. W. Hampton, Jr., & Co.* v. *United States*, 60 Treas. Dec. 722, T.D. 45220. In the *Hampton* case, the merchandise was described as Gross-Almerode glass pot clay. The appraiser advisorily described it as burnt clay. There was testimony

that it was a raw clay which had been dried, or shrunk; that it had to be shrunk, because if pots were made entirely of Almerode clay, unshrunk, such pots would not stand heat; that, in making pots, the burnt clay and the raw clay are mixed together; that, in baking the pots, the shrunk particles do not change; that, in manufacturing articles from clay, it has to be used in two forms, both raw and burnt; that the shrunken clay has undergone no process except shrinking. Exhibits in the *Hampton* case indicated that the merchandise was an earthy material which had been dried.

The court held that the merchandise was wrought because labor had been expended upon it, in that moisture had been removed by kiln-drying, but that it was clear that burnt clay did not have a new name or a new use, nor was it in a different form than if imported in its natural state. The court referred to the cases cited above and stated:

> The merchandise in question is distinguished from the cases cited. By the process of shrinking it has not acquired any new form, new use, or a new name. It is still Gross-Almerode clay, and it is necessary to be in its wrought condition for the purpose of manufacturing glass pots. In the burnt condition it is used with clay in the raw state for the purpose of manufacturing the product for which it is specially suited, and we hold it to be properly dutiable under paragraph 207, Tariff Act of 1922, as clays wrought or manufactured, at the rate of $2 per ton. [P. 725.]

In the case before us, the merchandise is shown not to be a mixture of two types of clay. It has not been dedicated to a single purpose, as was the merchandise in the *Robinson* and *Wm. A. Foster* cases, but it is used with other clays in the manufacture of refractory articles, apparently in somewhat the same manner as the burnt clay in the *Hampton* case was used. The *Hampton* case is more nearly analogous to this case than are the *Robinson* and *Foster* cases.

Were the processes, applied in this case to natural clay in the manufacture of Molochite, such as to transform it from clay, manufactured, into a manufacture of clay?

Whether an imported article is, for tariff purposes, a manufacture of certain material, or is that material, manufactured, is an issue with which the courts have labored many times. General statements as to the distinction have been made, but each case necessarily stands on its own particular facts. *J. B. Henriques, Inc.* v. *United States*, 46 CCPA 54, C.A.D. 695; *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 CCPA 42, C.A.D. 726. The general principle has been stated as follows:

> For it is now thoroughly established that a provision for a named material "manufactured" and one for "manufactures" of that material have different tariff meanings. *United States* v. *Nippon Co. et al.*, 32 C.C.P.A. (Customs) 164, C.A.D. 303. While to constitute an article a manufacture, it may be necessary to convert the article into an entirely different article, it is only necessary that

the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material, to be manufactured. * * * [*United States* v. *C. J. Tower & Sons*, 44 CCPA 1, C.A.D. 626, at p. 7.]

The applicable law is clear. To constitute an article "manufactured" it is not necessary that the article be converted into a new and different article, having a distinctive name, character or use different from that of the original article (such would be the requirements to constitute an article a "manufacture"), but only that the article be so processed that it be removed from its crude or primary state, though it remain a variety of the original material. * * * [*Chas. H. Demarest, Inc.* v. *United States*, 44 CCPA 133, C.A.D. 650, at p. 137.]

These cases as well as numerous others require that to be a "manufacture of," there must be a transformation of the starting material into a new article of commerce. "There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use.'" (*Anheuser-Busch Brewing Association* v. *United States*, 207 U.S. 556, at page 562; see also, *United States* (*Index Industrial Corp., Party in Interest*) v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809.)

In *Kleinberger & Katz* v. *United States*, 12 Ct. Cust. Appls. 571, T.D. 40798, it was pointed out that there was a clear distinction between an article "manufactured" and a "manufacture of" an article, the former importing a mere processing operation and the latter transformation into a completed new article of commerce.

On the record before us, showing that Molochite is the trade name of a calcined clay, that is, raw china clay to which nothing has been added, which has been fired to a temperature which does not vitrify it, which is shaped into rough brick solely for convenience in firing, and which, after firing, is crushed, screened, and graded, so that the clay thus processed gains dimensional stability and loses the property of being molded, we hold that Molochite is clay, manufactured. It is properly classified under paragraph 207 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739; T.D. 52820), as wrought or manufactured clay, dutiable at the rate of $1 per ton.

In all other respects and as to all other claims, the protest is overruled.

Judgment will be entered accordingly.