(C.D. 2573)

CLOSE AND STEWART *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 20, 1965)

*Witherspoon, Kelley, Davenport & Toole* (*Allan H. Toole* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

Before RAO AND FORD, Judges

FORD, Judge: Plaintiff imported at the port of Spokane, Wash., certain merchandise variously described in the entry papers as "20

Walnut stock blanks" and "Walnut Gun Blocks, Wood Blocks Dressed on more than 1 side." The importation was classified by the collector of customs as rifle stocks, wholly or partly manufactured, in paragraph 365 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 365), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and duty was imposed thereon at the compound rate of $2.50 each and 25 per centum ad valorem.

By timely protest, filed pursuant to section 514 of said tariff act (19 U.S.C., sec. 1514), a cause of action has evolved. This court is now called upon to determine whether said classification by the collector was correct or whether plaintiff's claim for classification of the articles as gun blocks for gunstocks within the free entry provisions of paragraph 1803 of the Tariff Act of 1930 (19 U.S.C. § 1201, par. 1803), as amended, or as manufactures of wood, not specially provided for, in paragraph 412 of said act (19 U.S.C. § 1001, par. 412), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, for which duty at the rate of 16⅔ per centum ad valorem is provided, is the proper classification.

For ready reference, we quote the statutory provisions above referred to.

Paragraph 365 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra:*

Stocks, wholly or partly manufactured:
 For shotguns * * *
 For rifles_____ $2.50 each
                        and 25%
                        ad val.

Paragraph 1803 of the Tariff Act of 1930, as amended, *supra:*

(1) Timber hewn, sided, or squared * * *.

(2) Logs; timber, round, unmanfactured; pulp woods; firewood, handle bolts, shingle bolts; gun blocks for gunstocks, rough hewn or sawed or planed on one side; and laths; all the foregoing not specially provided for. [Free entry.]

Paragraph 412 of said act, as modified by the Annecy protocol, *supra:*

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:
 Clothespins other than spring clothespins * * *

 *   *   *   *   *   *   *
 Other (* * * *)_____ 16⅔% ad val.

Three witnesses were called to testify on behalf of plaintiff. The first of them, Donald S. Hopkins, identified himself as a member of several conservation clubs and the author of various articles dealing with rifles, cartridges, and hunting. His principal recreation since

boyhood has been hunting and, as a hobby, the development of custom-made rifles and cartridges. He has engaged in hunting on this continent every year since 1920 and in Africa since 1948. It was he who selected the 20 gun blanks or blocks while on a trip to England and had them shipped to the United States. He stated that such blanks have been imported since 1930 in quantities of 3 to 4 or from 15 to 20 at a time.

Plaintiff's second witness was Alvin L. Biesen, a custom gun dealer since 1946 who, with the use of metal and wood, makes completely finished rifles and shotguns which he has sold throughout the United States and in many countries abroad.

The third witness was Harry C. Luft who has been engaged in the gunsmithing profession full-time since 1948 and on a part-time basis since 1929. In connection with his profession, he has shaped approximately 150 gunstocks to fit rifles for customers in most of the states of the United States.

One of the gunstock blanks comprising the merchandise at bar was received in evidence as plaintiff's exhibit 1.

The testimony adduced by the above-referred-to-witnesses, all of whom the court considered to be well qualified, may be summarized as follows:

Plaintiff's exhibit 1 is representative of the entire shipment, except for the fact that two sides have been sanded lightly to remove the varnish to enable the wood to dry out. The 20 gunstock blanks in controversy were at the time of importation planed and varnished on all four sides.

As to how merchandise such as plaintiff's exhibit 1 is made, it was explained that trees are chosen, cut down, and sawed by regular saws. Pieces are then selected for figure, and it is chiefly where branches join the trunks of trees or at the base of trees that one finds the preferred configurations or grainings. The wood is then seasoned by drying for 2 or 3 years. Said cuttings, sawed into wood boards about 3 inches thick, are examined for configurations and are then cross-sawed. At this stage, the merchandise is called a board or a plank. It is subsequently sawed roughly into shapes similar to a gunstock as is represented by plaintiff's exhibit 1. This is done in order to save handling and shipping costs and to get as many blanks as possible out of a plank.

A gun blank or block was described as a sawed piece of lumber, roughly shaped in the form of a gunstock, oversized, from which a gunstock can be manufactured. Exhibit 1 was identified as a gun blank or block and not as a stock, inasmuch as it is the raw material from which a stock is made.

It may be interposed at this point that exhibit 1 measures approximately 37½ inches in length and in roughly outlined gunstock shape

tapers from 2¾ inches to 6½ inches in width, and is about 2½ inches thick.

As to what is done with merchandise similar to plaintiff's exhibit 1, it was explained that a design or sample is given to a gunsmith who removes all varnish from the surfaces, lays out in pencil a rough design of a gunstock, and then, by means of woodworking tools— files, chisels, and rasps—removes all unnecessary wood. He then inlets slots for the trigger action and for the barrel, and gradually, with the use of his tools, works the blank into proper shape. It is then smoothed off by various grades of sandpaper and shaped to the customer's specifications. Subsequently, it is finished with either varnish, linseed oil, or alkanet root to give it color, after which it is polished by hand for many weeks to give it the proper custom finish. The resultant product is a completed gunstock.

There was received in evidence as plaintiff's exhibit 2 an article stated by witness Biesen to be a semifinished gunstock, which he had made on a "duplicating carver" or a profile machine. In the trade or profession of gunsmithing, articles like exhibit 2 are commercial products which are bought and sold as semifinished gunstocks. A gun blank or block can not be referred to as a stock or vice versa. A gun blank or block becomes a semifinished gunstock when it is partially shaped inside and outside to its general ultimate shape and has been inletted with slots for the trigger action and for the barrel.

Inasmuch as the record indicates that the imported articles are planed on all sides, plaintiff abandons its claim within the provisions of paragraph 1803 of the Tariff Act of 1930 which grants free entry to gun blocks for gunstocks which are rough hewn or sawed or planed on *one* side. Said claim will, accordingly, be dismissed.

Plaintiff, however, relies on its alternative claim that the importation, consisting of gun blocks for gunstocks planed on all sides, should properly have been classified as manufactures of wood in paragraph 412 of said tariff act, as modified by the Annecy protocol, rather than as rifle stocks, wholly or partly manufactured, in paragraph 365.

From the uncontradicted testimony of plaintiff's three witnesses, it would appear that, in the business or profession of gunsmithing, there is a distinction drawn between a wholly or partly manufactured gunstock and a gun block from which a gunstock eventually will be made.

Such a distinction seems likewise to have been recognized by Congress when it provided *eo nomine* for stocks, wholly or partly manufactured, in paragraph 365 of the tariff act and for gun blocks for gunstocks in paragraph 1803 thereof. The fact that the free entry provisions of paragraph 1803 are limited to only such gun blocks for gunstocks as have been rough hewn or planed or sawed on one side

would not *ipso facto* make such articles which have been planed on more than one side any the less gun blocks for gunstocks. And the uncontradicted evidence before us indicates that such is not the case.

It appears from the record herein that a gun block for a gunstock does not reach the status of a gunstock, partly manufactured, until such time as a gun block has been so manipulated and advanced as to be partially formed inside and out to its general ultimate shape and has been inletted with slots for the trigger action and the barrel.

In the brief of defendant, it is urged that the case at bar presents a similar problem to that raised in the cases of *United States* v. *The Univis Lens Co.*, 20 CCPA 375, T.D. 46135, and *Univis Lens Co.* v. *United States*, 66 Treas. Dec. 850, Abstract 28365. The same kind of merchandise described as "Moulded Bifocal Lens Blanks Rough" was involved in both *Univis* cases. The importations were classified as "Optical glass or glass used in the manufacture of lenses or prisms for spectacles, * * * in any and all forms" in paragraph 227 of the Tariff Act of 1930, and plaintiff contended for the lower rate provisions of paragraph 226 of said act as "Lenses of glass or pebble, molded or pressed, or ground and polished to a spherical, cylindrical, or prismatic form, * * * wholly or partly manufactured, with the edges unground, * * *."

In arriving at the conclusion that the merchandise there in issue should properly be classified in paragraph 226 of the tariff act, the court, in the second of the *Univis* cases, above referred to, had occasion to say—

* * * We repeat what we said in our prior decision:

The merchandise represented by Exhibits 1, 2, and 3 is so far manufactured that it has lost its identity as "optical glass or glass used in the manufacture of lenses", and has become complete lenses, which simply require to be ground or adjusted to fit them for instant use according to the requirements of the eyes of the particular individual for whom the optometrist has prescribed them.

We are of the opinion that the *Univis* cases, above referred to, are clearly distinguishable from that at bar. Not only are the merchandise and competing provisions of law in said cases different from those presently at issue but also the record evidence in the *Univis* cases indicates that, in the condition of the merchandise as imported and sold to the trade, the only manufacturing processes remaining to be done were those of grinding and adjusting the lenses to the eyes of the particular individual for whom they were prescribed.

In the case at bar, however, the record evidence is uncontradicted that the gun blocks for gunstocks do not become semifinished or partly manufactured gunstocks until not only have they been partially shaped

inside and out to their general ultimate shape, but also have been inletted with slots for the trigger action and barrel.

With regard to the statutory provision for manufacturers of wood, not specially provided for, contained in paragraph 412 of the Tariff Act of 1930, as modified by the Annecy protocol, *supra*, relied upon by plaintiff herein, we here make reference to the case of *United States (Index Industrial Corp., Party in Interest)* v. *National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809, wherein our appellate court set forth what constitutes a "manufacture of" a material—

* * * to be a "manufacture of," there must be a transformation of the starting material into a new article of commerce. "There must be transformation; a new and different article must emerge, 'having a distinctive name, character or use.'" *Anheuser-Busch Brewing Ass'n* v. *United States*, 207 U.S. 556, 562.

The testimonial record in the present case discloses that the "starting material," consisting of sawed lumber, has been transformed into a new article of commerce, having a distinctive name, to wit, a gun block for a gunstock, planed and varnished on all four sides. It appears, moreover, that such an article in turn is the material which, after inletting and other manufacturing operations have been performed, becomes a rifle stock, wholly or partly manufactured. In our opinion, therefore, at the time of importation the articles in controversy should properly have been classified as manufactures of wood, not specially provided for, in paragraph 412 of the Tariff Act of 1930, as modified by the Annecy protocol, *supra*, and subjected to duty at the rate of 16⅔ per centum ad valorem, as claimed by plaintiff.

Judgment will issue accordingly.