STATE of Utah, Plaintiff and Respondent,

v.

Chris HORSLEY and Linda Jo Larsen, Defendants and Appellants.

No. 16053.

Supreme Court of Utah.

June 5, 1979.

Robert J. Stansfield, Salt Lake City, for defendants and appellants.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Defendants appeal from their conviction of possession with intent to produce or manufacture a controlled substance, in violation of Section 58–37–8(1)(a), under the Utah Controlled Substances Act.[1] We affirm. All statutory references are to Utah Code Ann., 1953, as amended.

Pursuant to a search warrant, police officers on May 11, 1977, searched defendants' apartment in Logan, Utah. The officers confiscated various items including an "IS

1. § 58–37–1 et seq.

O–2" cooker, substantial amounts of marijuana, small scales, and other paraphernalia. The cooker was in the "on" position and was apparently cooking a plant material inside.

At the preliminary hearing, a forensic chemist testified the plant material was marijuana, and that such an IS O–2 cooker is used to remove the non-hallucinogenic elements from the raw marijuana plant, thereby producing a more concentrated and potent form of marijuana, commonly known as "hash". The process involves the addition of sulfuric acid and sodium bicarbonate at certain stages of the procedure, the goal being the extraction of the resin from the plant. The chemist testified that although certain chemical changes occur during the process, the hallucinogenic material remains essentially unchanged, but is in a more concentrated form.

Defendants assert on appeal that the legislature did not intend the statute under which they were convicted to apply to circumstances where the substance out of which a controlled substance is manufactured is also a controlled substance. Rather, they contend, it applies only to circumstances involving the manufacture of a controlled substance from materials which are not controlled. Defendants also claim that by intending to process marijuana into "hash", they did not have the intent to "manufacture" a controlled substance. In support of this proposition, they cite *Anheuser-Busch Brewing Association v. United States,* 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336 (1908), in which the Supreme Court stated that the term "manufacture" contemplates that "[t]here must be [a] transformation; a new and different article must emerge, 'having a distinctive name, character, or use.'" Id. at 562, 28 S.Ct. at 207. Here, they point out, since the substance was marijuana before the cooking process and would simply have been a more potent form of marijuana thereafter, no

"manufacture" has occurred and the convictions cannot stand.

We note that the following statutory definition of marijuana makes no distinction between "marijuana" and a more potent extract from the plant:

§ 58–37–2(25) The words "cannabis" or "marihuana" mean all parts of the plants cannabis sativa L. and cannabis indicia, [sic] whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin. Any synthetic equivalents of the substances contained in the plants cannabis sativa or cannabis indicia, or in the resinous extractives of the cannabis species or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity shall also be included.

Thus, under the act, marijuana was both the original substance and the substance to be manufactured, although "hash" is clearly a more potent form of marijuana.[2]

However, the key question is not whether defendants intended to manufacture a controlled substance in the usual sense of a "new and different article" as stated by the United States Supreme Court, *supra,* but whether defendants intended to "manufacture" a controlled substance according to the definition and intent of the legislature.[3] Section 58–37–2(10) defines "manufacture" as "the production, preparation, propagation, *compounding, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin* . . ." (Emphasis added.) We believe the evidence indicates defendants intended to engage in the "processing of a controlled substance directly or indirectly by extraction from substances of natural origin" when they cooked and added chemicals to the marijuana plant in an effort to produce "hash".

---

**2.** "Hash" or "Hashish" has been defined as a different controlled substance in several similar statutory schemes. *State v. Bollander,* 110 Ariz. 84, 515 P.2d 329 (1973); N.J.Stat.Ann. § 24:21–2; N.M.Stat.Ann. § 30–31–2 L.

**3.** *Accord, Bibb v. Commonwealth,* 201 Va. 799, 113 S.E.2d 798 (1960).

We also see no indication of legislative intent to distinguish between processing substances which can be legally obtained and processing those such as marijuana, which can usually be obtained only illegally. The intent of the statute is to make unlawful the possession of *any* substance with the intent to manufacture, in the statutory sense, a controlled substance.

Defendants concede that, under the statutory definition of marijuana, "hash" is a controlled substance under the act. We therefore hold the defendants were properly convicted, their conduct being proscribed by the terms of the act.[4]

CROCKETT, C. J., and WILKINS and STEWART, JJ., concur.

HALL, Justice (dissenting):

I dissent for the reason that the statutory definition of marijuana makes no distinction between marijuana and "hash", or "hashish".[1] They are simply *one and the same* under the statute, the possession of which constitutes a class B misdemeanor.[2]

The statute making it unlawful to produce or manufacture a controlled substance has no application here since there was no evidence that defendant *produced* or *manufactured* marijuana. On the contrary, the evidence was that they simply *possessed* marijuana and that they prepared it for use by eliminating some of its non-hallucinogenic parts and thus obtained a condensed form of marijuana. The expert testimony of the forensic chemist was that the chemical makeup of the substance remained unchanged and that "hash is marijuana".

It lies within the prerogative of the Legislature to classify "hash", or "hashish", as a controlled substance separate and apart from marijuana, and this Court should not infringe upon that prerogative.

---

4. See also *State v. King*, La., 322 So.2d 205 (1975), where the court reached the same conclusion based on similar facts and nearly identical statutory language.

1. U.C.A., 1953, 58–37–2(25).

2. U.C.A., 1953, 58–37–8(2)(b).