**MADISON GALLERIES, LTD., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

Court No. 81–05–00643.

United States Court of International Trade.

June 7, 1988.

Fitch, King & Caffentzis (Richard C. King and James Caffentzis), New York City, for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Dept.

of Justice (Susan Handler–Menahem), New York City, for defendant.

## OPINION

AQUILINO, Judge:

This case arises out of the importation into the United States from Hong Kong of decorated porcelainware, the classification of which is said by the parties to raise an issue of law of first impression regarding the Generalized System of Preferences.

### The Merchandise

The goods are described in their entry papers, which were admitted into evidence at trial[1], as being in various forms, including fish pot, large bottle-shaped vase, plaque, hexagonal garden stool, platter, elephant & ring vase, hexagonal engraved vase, globular-shaped vase, melon jar, engraved dragon vase, and lion & dragon vase. A number of the pieces were accompanied by wooden stands or frames.

The Customs Service classified the chinaware under item 534.94, Tariff Schedules of the United States ("TSUS"), and duties were assessed at rates of 22.5 or 20.8 percent *ad valorem*, depending upon date of entry.

The goods were given their shapes in the Republic of China and their outward appearances in Hong Kong, a beneficiary developing country or "BDC" at the time within the meaning of Title V of the Trade Act of 1974, 19 U.S.C. § 2461 *et seq.* That is, blank porcelain pieces were produced in Taiwan and then shipped to Hong Kong for decoration. Since there is no dispute that the decoration process added at least 35 percent to the appraised value of the merchandise, the plaintiff takes the position that the articles should have been entered duty-free under the Generalized System of Preferences or "GSP" per TSUS item A*534.94. During the years of importation, goods from Hong Kong within this

category were entitled to GSP treatment whereas those from Taiwan were not.[2]

### Discussion

The plaintiff rests this case in the first instance on its analysis of the Generalized System of Preferences and secondarily on the nature of the processing of the merchandise in Hong Kong.

### I

Plaintiff's precise position on the law is that it does not require

that articles or materials imported into a BDC be substantially transformed therein before eligible articles produced or manufactured in the BDC from these imported articles or materials qualify for duty free entry under the GSP, as long as the sum of the cost or value of the materials produced in the BDC plus the direct costs of processing operations performed in the BDC equal or exceed 35 percent of the appraised value of the imported articles at the time of their entry into the customs territory of the United States.[3]

The subsection of the Trade Act of 1974 referred to, 19 U.S.C. § 2463(b), states:

Eligible articles qualifying for duty-free treatment

The duty-free treatment provided under section 2461 of this title with respect to any eligible article shall apply only—

(1) to an article which is imported directly from a beneficiary developing country into the customs territory of the United States; and

(2) if the sum of (A) the cost or value of the materials produced in the beneficiary developing country or any 2 or more countries which are members of the same association of countries which is treated as one country under section 2462(a)(3) of this title, plus (B) the direct costs of processing operations performed in such beneficiary developing country or

---

1. *See* transcript ("Tr.") at 6.

2. *Compare, e.g.,* TSUS General Headnotes 3(c)(i) and 3(c)(ii) at page 4 *with* 3(c)(iii) (item 534.-94.... Taiwan) (1980).

Classification of the wooden stands and frames is not now at issue.

3. Brief for Plaintiff, p. 6.

such member countries is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States. The Secretary of the Treasury ... shall prescribe such regulations as may be necessary to carry out this subsection.

In compliance with this statute, the Secretary has promulgated regulations, 19 C.F.R. § 10.171 *et seq.*, including § 10.177(a), which states:

"*Produced in the beneficiary developing country*" *defined.* For purposes of §§ 10.171 through 10.178, the words produced in the beneficiary developing "country" refer to the constituent materials of which the eligible article is composed which are either:

(1) Wholly the growth, product, or manufacture of the beneficiary developing country; or

(2) Substantially transformed in the beneficiary developing country into a new and different article of commerce.

Customs imposed duties on the merchandise herein after concluding that it did not fall into either category of this regulation. However, the plaintiff relies on the undisputed fact that the "direct costs of processing operations performed in Hong Kong ... equal or exceed 35 percent of the appraised value of the imported articles at the time of their entry into the customs territory of the United States", to quote from page 5 of its brief. Stated another way, the merchandise need not be "produced in the beneficiary country" as defined by the regulation since the direct costs of processing operations in that country within the meaning of the statute, 19 U.S.C. § 2463(b)(2)(B), standing alone, exceed the prescribed 35 percent minimum.[4]

Plaintiff's position is well-taken, although this conclusion does not mean that there is no authority in the statute for the regulations, as contended by the plaintiff, only that 19 C.F.R. § 10.177(a) is not controlling here. In fact, as shown above, the statute all but requires regulations. And an agency's interpretation of the law it is charged with administering is entitled to deference upon judicial review. *E.g., Consumer Products Div., SCM Corp. v. Silver Reed America, Inc.*, 753 F.2d 1033, 1039 (Fed.Cir.1985); *Melamine Chemicals, Inc. v. United States*, 732 F.2d 924, 928 (Fed. Cir.1984). Moreover, this court is unable to conclude that section 10.177(a) is in conflict with, or an unreasonable expansion of, the statute, 19 U.S.C. § 2463(b)(2). However, it is clear that the regulation gives meaning to factor (A) of that section 2463(b)(2), and not to factor (B), which is the one relied on by the plaintiff.

Soon after the statute and regulation became law, there apparently were a "number of questions ... concerning what materials produced in the beneficiary developing country are to be included in the computation of the 35 percent criterion under ... the Trade Act." 41 Fed.Reg. 14,547 (April 6, 1976). In general, the answer given by the office of the Commissioner of Customs in its T.D. 76–100 to those questions was as follows:

... The 35 percent criterion can be satisfied entirely by the cost or value of materials produced in the beneficiary developing country, the direct costs of processing operations, or, any combination of the two.[5]

This answer is as sound today as it was then notwithstanding T.D. 78–398, which was an internal advice to a district director of Customs concerning GSP coverage of certain porcelain articles manufactured in

---

**4.** The plaintiff points out that the actual cost "in every instance is in excess of 50 percent" [Plaintiff's Reply Brief, p. 2], "more than 56% to 73%" [Brief for Plaintiff, p. 12], relying on the GSP Certificate of Origin Form A's in evidence.

The defendant concedes that the statutory minimum is met. *See, e.g.,* Brief for the United States ("Defendant's Brief"), p. 5, n. 3.

**5.** 41 Fed.Reg. at 14,547. *Accord: Generalized System of Preferences: Direct Cost of Processing*

*Operations; Substantial Transformation,* C.S.D. 80–208, 14 Cust.Bull. 1085 (1980); *Generalized System of Preferences: Substantial Transformation of Bulk Recording Tape,* C.S.D. 79–441, 13 Cust.Bull. 1675 (1979); *Generalized System of Preferences: Molded Synthetic Rubber Tie–Down Straps; Direct Costs of Processing,* C.S.D. 79–63, 13 Cust.Bull. 1096 (1978).

Japan and decorated in Hong Kong. The request for advice was apparently premised upon a position similar to the plaintiff's here, namely, as stated therein,

> section 503 of the Trade Act of 1974 does not require merchandise to be a "product of" a beneficiary developing country, only that the merchandise be an "eligible article," imported directly from the beneficiary country and meet the 35 percent test.[6]

The advice given in that instance was negative on GSP entry of the goods based upon reasoning initially that 19 C.F.R. § 10.176(a), covering country-of-origin criteria, applies and then that the regulations have a basis in the statutory language.

As already stated, the court agrees that the regulations have such a basis. Indeed, they track closely the language of the Tariff Act. Since the GSP provisions of the act are predicated upon an "eligible article" as opposed to a "product of", the regulations thereunder have the same point of reference.[7]

The defendant argues that, "if substantial transformation is not required as it is with respect to questions of the country of origin for marking purposes, illogical results would follow"[8], referring to 19 U.S.C. § 1304, which requires every foreign article to be marked with the name of the country of its origin, and to 19 C.F.R. § 134.1(b), which defines that place to mean

> the country of manufacture, production, or growth of any article of foreign origin entering the United States. Further work or material added to an article in

another country must effect a substantial transformation in order to render such other country the "country of origin" within the meaning of this part.[9] That is, the defendant further argues, it "would not be logically or legally consistent to allow merchandise free entry from a beneficiary country when it was in fact a product of a non-beneficiary country."[10]

Defendant's argument does not apply in view of the facts of this case. Moreover, in *Midwood Industries, Inc. v. United States*, 64 Cust.Ct. 499, C.D. 4026, 313 F.Supp. 951, *appeal dismissed*, 57 CCPA 141 (1970), the court concluded that analysis of the marking requirements of section 1304(a) can include consideration of the nature of the intended, immediate recipient of a foreign article, *i.e.*, whether, for example, that recipient is a producer or a consumer. While subsequent cases may have "diminished" the significance of such a producer's-good-consumer's-good approach to marking issues[11], articles of commerce can and often do differ in a tariff sense from one link in the chain to another. This phenomenon is clearly depicted in *Torrington Company v. United States*, 8 CIT 150, 596 F.Supp. 1083 (1984), *aff'd*, 764 F.2d 1563 (Fed.Cir.1985), another case centering on the Generalized System of Preferences, primarily the "materials produced" factor of 19 U.S.C. § 2463(b)(2)(A). That factor was the focus, for, unlike this case, the direct costs of processing operations performed in the BDC within the meaning of section 2463(b)(2)(B) were not at least 35 percent of the appraised value of the merchandise in question.

---

**6.** *Generalized System of Perferences [sic]: Applicability of GSP to Articles Manufactured in Non-beneficiary Country But Decorated in Beneficiary Country*, T.D. 78–398, 12 Cust.Bull. 870 (1977).

**7.** As discussed in point II, *infra*, the evidence adduced in this case indicates that the goods are, in fact, the "product of" Hong Kong.

**8.** Defendant's Brief, p. 14.

**9.** *See also* 19 C.F.R. § 177.22(a).

**10.** Defendant's Brief, p. 14. On this point, the court notes in passing that, if the nature of the country of origin is of greater concern than that

of the eligible article, and if Taiwan were that country in this case, unlike Japan, for example, Taiwan was a BDC during the years in question, simply not for articles of the kind herein. *See, e.g.*, TSUS General Headnote 3(c)(i) at page 3 (1980). *Cf.* note 2 *supra*.

**11.** *Compare, e.g.*, *National Juice Products Ass'n v. United States*, 10 CIT ——, ——, 628 F.Supp. 978, 990 (1986), citing *Uniroyal, Inc. v. United States*, 3 CIT 220, 542 F.Supp. 1026 (1982), *aff'd*, 702 F.2d 1022 (Fed.Cir.1983), *with Torrington Company v. United States*, 764 F.2d 1563, 1571 (Fed.Cir.1985), *and Ferrostaal Metals Corp. v. United States*, 11 CIT ——, ——, 664 F.Supp. 535, 541 (1987).

■ In any event, *Torrington* reaffirms that products from BDC's must meet certain minimum content requirements in order to qualify for duty-free treatment.[12] The merchandise in this case meets those requirements, and thereby qualified for duty-free entry—without undermining non-GSP chapters of the Tariff Act of 1930.

## II

The defendant contends that it was not the intent of the Generalized System of Preferences to allow "pass throughs" or "those instances where a minor procedure was performed in the BDC which might have great value but accomplish little", to quote from page 11 of its brief. In this case, the defendant has conceded that the value added to the merchandise in Hong Kong exceeded the minimum adopted by Congress in the Trade Act of 1974 [13], but it has pressed for a showing that the goods underwent substantial transformation there.

■ The court has concluded that such a showing is not required as a matter of law in view of the facts and circumstances here, but the plaintiff did present evidence in support of its secondary position that the goods were substantially transformed in Hong Kong. At trial, its president testified, and both a blank and a finished elephant & ring vase, as well as a blank plaque and a photograph of two painted and framed plaques, were received in evidence.

That evidence satisfies the definition of substantial transformation set forth, for example, in *Torrington*, to wit, "a substantial transformation occurs when an article emerges from a manufacturing process with a name, character, or use which differs from those of the original material subjected to the process." 764 F.2d at 1568, citing *Texas Instruments, Inc. v. United States*, 681 F.2d 778, 782 (CCPA

1982), and *Anheuser–Busch Brewing Ass'n v. United States*, 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336 (1908).

The defendant argues that this definition is not satisfied here because the merchandise is not the result of a manufacturing process in Hong Kong and did not acquire a new name, character or use there. *See, e.g.,* Defendant's Brief, pp. 16–17. The government relies on *Hartranft v. Wiegmann*, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012 (1887), where the issue was whether cleaning and grinding off outer layers of seashells amounted to "manufacture". The Court held that the process did not, upon the following rationale:

> ... They were still shells. They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by hand or by mechanism, does not make the article necessarily a manufactured article, within the meaning of that term as used in the tariff laws. 121 U.S. at 615.

In *Anheuser–Busch*, a case involving corks for beer bottles, the Court added that "[m]anufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor, and manipulation." 207 U.S. at 562.

This definition of manufacture remains the starting point for resolving substantial-transformation issues. *See, e.g., Ferrostaal Metals Corp. v. United States*, 11 CIT ——, ——, 664 F.Supp. 535, 537 (1987), where the court also stated:

> ... The question, therefore, is whether operations performed on products in the country of exportation are of such a substantial nature to justify the conclusion that the resulting product is a manufacture of that country.

---

**12.** *See, e.g.,* 764 F.2d at 1565, citing H.Rep. No. 571, 93rd Cong., 1st Sess. 86–87 (1973), for a discussion of the rationale behind the content requirements.

**13.** Not only can Congress change the statutory minimum, but, under the act, the President is

authorized to terminate GSP treatment. For example, in his Proclamation 5805 of April 29, 1988, the President deleted both Taiwan and Hong Kong from the list of BDC's. *See* 53 Fed.Reg. 15,785, 15,786 (May 4, 1988).

In that action, cold-rolled sheet steel from Japan was annealed and dipped in molten zinc per a process known as continuous hotdip galvanizing and performed in New Zealand. The court concluded that the process substantially transformed the steel.

In this case, plaintiff's witness explained that, at the Wah Tung China Co. in Hong Kong, the blank porcelain pieces were decorated with desired oriental designs and scenes through painting and firing, which steps were repeated to provide surface relief and a multi-dimensional effect to the depictions. The result of this process, as exhibited by plaintiff's elephant & ring vase, is a reminder that the name "China" has been synonymous in English with fine porcelainware. More importantly, the court finds that exhibit (plaintiff's No. 1) to reveal a substantial transformation of character from that of the blank, plaintiff's exhibit 2. Defendant's counsel contended at trial that a vase is a vase is a vase, but, at best, this play on words is true for name only, as the character (and thus the use [14]) of the two objects in that category before the court are substantially different as a result of the applications of labor and materials in Hong Kong.

The import of that input is just as patent when the blank porcelain slab from Taiwan (plaintiff's exhibit 4) is contrasted with the subsequent Hong Kong artwork evident in plaintiff's exhibit 3. The transformation caused by the painted scenes is all but complete [15] and the equal of that which results when an artist completely superimposes his or her vision on an otherwise artless medium. Considering plaintiff's exhibit 4 vis-à-vis exhibit 3, the court finds a substantial transformation of both character and use. While plaque is the word used

in referring to both exhibits in the record, that choice of nomenclature is the equivalent of calling a painting a canvas, to refer to another, analogous medium for such artistic expression.

With the presentation of its four exhibits and testimony, the plaintiff would have the court reach similar findings of substantial transformations of the other goods imported. However, after careful consideration of the record, the court can only conclude that such phenomena, while inferred, are not sufficiently proven. That is, for reasons best known to the plaintiff, which has the burdens of proof and of persuasion, no exhibits of the remaining articles have been proferred—despite repeated objections by defendant's counsel, e.g.:

> In a case such as this, where the question is whether or not they have been substantially transformed, it is important we have before us exactly what came in so that the court can see whether or not it has been substantially transformed.[16]

Indeed, plaintiff's president himself testified that "[y]ou just know after ... handling things and looking at things." Tr. at 20. Thereafter, in attempting to describe the remaining articles, the witness testified that their decorations were "entirely different ... [i]n design and color. What is portrayed on them is entirely different." Id. at 40. Clearly then, this is not like the case involving galvanized sheet steel, for example, where the presence in court of that merchandise was not necessary. Here, the nature of the claimed substantial transformations of the other goods requires better evidence than adduced for affirmative findings thereof.

---

**14.** Clearly, the Hong Kong product is so superior in appearance as to alter not only its use but its price. For example, while aesthetics is an individual affair, it is safe to say that flowers would not necessarily enhance the appeal of the finished vase, but they would enhance any such appeal on the part of the blank.

  In arguing its position on the GSP, the defendant conceived that

  > an inexpensive, white vase could leave Taiwan costing very little money and be sent to Hong Kong where a small gold swoosh could be be painted on it. Because of the cost of the gold

and the minor cost of the vase, the product could easily meet the 35% requirement but with no great benefit to the BDC. Defendant's Brief at 11.

Suffice it to state that this is not the case here, and marking the goods as products of Hong Kong was not errant in view of the evidence at hand.

**15.** The record indicates 90–95 percent exterior surface coverage. See, e.g., Tr. at 21.

**16.** Tr. at 16–17. See id. at 27–28.

*Conclusion*

Of course, as discussed above, the plaintiff relies primarily on defendant's concession of fact regarding the value added to the goods in Hong Kong, and the plaintiff has persuaded the court that all the porcelainware was thus entitled to duty-free entry under the Generalized System of Preferences.

Judgment will enter accordingly.

## JUDGMENT

This case having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that the porcelainware imported under cover of the entries that are the basis of this case is correctly classifiable under item A*534.94, TSUS; and it is further hereby

ORDERED, ADJUDGED and DECREED that the United States Customs Service reliquidate the aforesaid entries duty free under item A*534.94, TSUS and refund any duties paid, together with interest, as provided by law.