**MADISON GALLERIES, LTD.,**
Plaintiff–Appellee,

v.

**The UNITED STATES,**
Defendant–Appellant.

No. 88–1559.

United States Court of Appeals,
Federal Circuit.

March 8, 1989.

Richard C. King, Fitch, King and Caffentzis, New York City, argued for plaintiff-appellee. With him on the brief was James Caffentzis.

Al J. Daniel, Jr., Dept. of Justice, New York City, argued for defendant-appellant. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Before FRIEDMAN and SMITH, Circuit Judges, and NICHOLS, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge.

This is an appeal from the judgment of the United States Court of International Trade, *Madison Galleries, Ltd. v. United States*, 688 F.Supp. 1544 (Ct.Int'l Trade 1988) (Aquilino, J.). The trial court held that articles imported directly from a beneficiary developing country ("BDC") are eligible for the statutory duty-free treatment if the direct cost of processing operations performed in the BDC is not less than 35 percent of the appraised value of the imported article, notwithstanding the fact that the imported article is the "growth, product, or manufacture" of a non-BDC country. We affirm.

### Background

The facts of the present case are set forth in the able opinion of the trial court, *id.* at 1545, and familiarity with those facts is presumed. Briefly, Madison Galleries,

Ltd. ("Madison") is an importer of various porcelainware articles. The porcelainware items here at issue were formed into undecorated "blanks" in the Republic of China (Taiwan), a non-BDC country. The blank porcelain pieces were then sent to Hong Kong, a BDC as defined in Title V of the Trade Act of 1974, 19 U.S.C. § 2462, where they were attractively decorated. There is no dispute that the cost of the decoration process undertaken in Hong Kong contributed well over 35 percent of the articles' appraised values at the time they were imported into the United States. The Customs Service classified the porcelainware under TSUS item 534.94 and assessed duties according to that classification. Madison filed protests, claiming that the goods were entitled to duty-free treatment under the General System of Preferences ("GSP"), specifically TSUS item A*534.94. The protests were denied and this suit followed.

The Court of International Trade held that the imported articles were eligible for duty-free treatment under 19 U.S.C. § 2463(b), and alternatively that some of the goods were substantially transformed in Hong Kong into new and different articles and were therefore eligible for duty-free treatment as "growth, product, or manufacture" of a BDC. The United States ("government" or "Customs") does not appeal the trial court's finding of substantial transformation as made. Thus, as to the goods found by the trial court to be substantially transformed in Hong Kong, there is no dispute that these goods are eligible for duty-free treatment, but others remain, as to which we are to decide.

Regarding the goods which were not found to be substantially transformed in Hong Kong, these originated from Taiwan, a non-BDC country, and are assumed, for purposes of this opinion, to have been the "growth, product, or manufacture" of that country, not having lost that identity by the added work on them in Hong Kong. The government argues that goods must be "growth, product, or manufacture" of a BDC country in order to be eligible for duty-free treatment. Therefore, notwithstanding the fact that the decoration pro-

cess undertaken in Hong Kong exceeds 35 percent of the goods' appraised values, the government suggests that these goods are ineligible for duty-free treatment because of their Taiwanese origin.

## Issue

The issue before us on appeal is whether goods imported directly from a BDC country, where over 35 percent of value was added, are eligible for duty-free treatment under 19 U.S.C. § 2463(b) where the goods are assumed the "growth, product, or manufacture" of a non-BDC country. The relevant facts are undisputed and the issue is therefore purely one of statutory interpretation over which we exercise our own independent judgment without deference to the trial court. *Chula Vista City School District v. Bennett,* 824 F.2d 1573, 1579 (Fed. Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988); *Institut Pasteur v. United States,* 814 F.2d 624, 626, 2 USPQ2d 1048, 1049 (Fed.Cir.1987).

## Opinion

### I

█ This is a case of statutory construction. The starting point in every case involving construction of a statute is the language itself. *See, e.g., Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 108 S.Ct. 1255, 1258, 99 L.Ed.2d 460 (1988); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Watt v. Alaska,* 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). Where the plain language of the statute would settle the question before the court, the legislative history is examined with hesitation to determine whether there is a clearly expressed legislative intention contrary to the statutory language. *Immigration and Naturalization Service v. Cardoza Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). Sometimes the literal language of some part of a statute may seemingly contradict the intent of the statute taken as a whole. *Ambassador Division of Florsheim Shoes Co. v. United States,* 748 F.2d

1560, 3 Fed.Cir. (T) 28 (1984). Absent a clear cut contrary legislative intent, the statutory language is ordinarily regarded as conclusive. *Burlington Northern R.R. v. Oklahoma Tax Commission*, 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987); *United States v. James*, 478 U.S. 597, 606, 106 S.Ct. 3116, 3122, 92 L.Ed. 2d 483 (1986); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed. 2d 766 (1980).

The statute here in controversy is the Trade Act of 1974 and specifically section 2463(b) which provides, in pertinent part:

(b) Eligible articles qualifying for duty-free treatment

The duty-free treatment provided under section 2461 of this title with respect to any eligible article shall apply only—

(1) to an article which is imported directly from a beneficiary developing country into the customs territory of the United States; and

(2) If the sum of (A) the cost or value of the materials produced in the beneficiary developing country * * * plus (B) the direct costs of processing operations performed in such beneficiary developing country * * * is not less than 35 percent of the appraised value of such article at the time of its entry into the customs territory of the United States.

The Secretary of the Treasury * * * shall prescribe such regulations as may be necessary to carry out this subsection.

19 U.S.C. § 2463(b).

The government urges us to interpret this statute as conditioning eligibility for duty-free treatment upon satisfaction of the following criteria:

First, the article must be "imported directly" from the BDC, 19 U.S.C. § 2463(b)(1), 19 C.F.R. § 10.175 * * * [and] [s]econd, the article must be "merchandise which is the growth, product, manufacture, or assembly of a beneficiary developing country * * *," 19 U.S. C. § 2463; 19 U.S.C. [sic, C.F.R.] § 10.176(a).

Government's Brief at 26. With regard to the first stated criterion, this language very closely tracks the language of the statute and both parties agree, as do we, that this criterion was required and was satisfied in this case. The controversy therefore centers upon the second stated criterion, namely that the articles must be merchandise which is the "growth, product, manufacture" or assembly of a BDC.

■ The first regulation to which the government refers states:

*"Produced in the beneficiary developing country" defined.* * * * [T]he words "produced in the beneficiary developing country" refer to the constituent materials of which the eligible article is composed which are either:

(1) Wholly the growth, product, or manufacture of the beneficiary developing country; or

(2) Substantially transformed in the beneficiary developing country into a new and different article of commerce.

19 C.F.R. § 10.177(a).

Judge Aquilino correctly observed in the trial court opinion that the cited regulation "gives meaning to factor (A) of that [sic] section 2463(b)(2), and not to factor (B), which is the one relied on by plaintiff." *Madison Galleries*, 688 F.Supp. at 1546. We agree and hold that this regulation is not controlling, or even persuasive, as to the interpretation of factor (B).

■ Madison has not focused on a second regulation cited by the government and very much supportive of the government's position. In pertinent part, that regulation states:

*Merchandise produced in a beneficiary developing country* * * *. Merchandise which is (1) the growth, product, manufacture, or assembly of (i) a beneficiary developing country * * * and (2) imported directly from such beneficiary developing country * * * may qualify for duty-free entry under the Generalized System of Preferences ("GSP").

29 C.F.R. § 10.176(a). The quoted sentence of this regulation inferentially, if not expressly, requires an article to be the "growth, product, or manufacture" of a

BDC in order to qualify for duty-free treatment. The trial court held that the regulation was not controlling, because it speaks of "products" as that term is used in the country of origin marking law, 19 U.S.C. § 1304, rather than "eligible articles" as used in the GSP statute. *Madison Galleries*, 688 F.Supp. at 1547. We disagree. The regulation specifically addresses "qualif[ication] for duty-free entry under the Generalized System of Preferences". It is beyond dispute that those enacting this regulation intended it to control in the area of GSP treatment. We regard this regulation as the Customs Service's interpretation of 19 U.S.C. § 2463(b)(2).

■ We recognize that an agency's interpretation of the statutes it is charged with administering is normally entitled to great deference by a reviewing court. *See, e.g., Young v. Community Nutrition Institute*, 476 U.S. 974, 981, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959 (1986); *Chemical Mfrs. Ass'n v. Natural Resources Defense Council*, 470 U.S. 116, 125, 105 S.Ct. 1102, 1107, 84 L.Ed.2d 90 (1985); *Chula Vista City School District v. Bennett*, 824 F.2d 1573, 1580 (Fed.Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988); *Beneficial Corp. and Subsidiaries v. United States*, 814 F.2d 1570, 1573 (Fed. Cir.1987). However, an agency interpretation which conflicts with the same agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view. *Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 447 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987).

The Customs Service has previously taken the position that duty-free eligibility can be satisfied entirely by the direct cost of processing operations in a BDC. *E.g.,* T.D. 76–100, 10 Cust.Bull. & Dec. 176 (1976). In 19 C.F.R. § 10.176(a) and in this court, Customs advocates a contrary position. Because Customs has not adhered to a consistent position on this issue, we accord its interpretation considerably less deference than would be customary for a consistent position.

■ Turning now to the language of the statute itself, it is conspicuously silent as to a requirement that the eligible article be "growth, product, or manufacture" of a BDC. Further, there is no indication that such a requirement is to be inferred. The plain language of the statute states that the *sum* of (A) the cost or value of the materials produced in the BDC *plus* (B) the direct costs of processing operations performed in the BDC must be not less than 35 percent of the article's appraised value. No other condition is stated for BDC eligibility, and the only rational interpretation is, none is meant.

The word "sum" admits of many definitions. However, the meaning of words depends on their context. Here, "sum" is used in a mathematical context, so it must be understood as a mathematical term. Webster's Third New International Dictionary, Unabridged at 2289 (1976) gives the following mathematical definition of "sum":

> [T]he aggregate of two or more numbers, magnitudes, quantities, or particulars: the result of performing addition.

At oral argument, the government suggested that Congress intended for the "sum" to include at least a partial contribution from the first specified addend, "materials produced in the beneficiary developing country". Such logic runs counter to the statutory language. By using the term "sum", Congress expressed its intention that eligibility be governed by the aggregate of the two addends it specified, *irrespective* of their individual contributions to that aggregate. That is a fundamental tenet of addition with which we presume Congress was familiar.

We therefore conclude that the language of section 2463(b) is not ambiguous, and that Congress intended to permit the "sum" to be calculated from any combination of the two addends specified in the statute, including a zero value for either one.

## II

Having concluded that the language at issue is not ambiguous, we examine the

legislative history only to determine whether there is a clearly expressed legislative intention contrary to the literal construction we have given to the statute. *Immigration and Naturalization Service v. Cardoza–Fonseca,* 480 U.S. at 432 n. 12, 107 S.Ct. at 1213 n. 12.

There are two statements in the legislative history that we find pertinent to the language of section 2463(b). The Senate Report states that "[i]n those cases where *only one developing country* had contributed to the value of a product, a flat local cost requirement of 35 percent would be applied." (Emphasis supplied) S.Rep. No. 1298, 93d Cong., 2d Sess. pt. III, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7186, 7217. Implicit in this statement is the recognition that there will be cases where only one BDC contributes to the value of an eligible article, but that BDC will not be the sole contributor of value. Of necessity then, a non-BDC country is the presumed contributor of up to 65 percent of the eligible article's value. In the Joint Committee Report, the committee explained section 2463(b) as requiring that "in the case of a *single beneficiary country,* at least 35 percent of the value of the article [is to] be *added* in such country." (Emphasis supplied). Joint Comm.Rep. No. 1644, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7367, 7398. This statement reinforces our view that the Congress contemplated granting eligibility to articles produced in non-BDC countries that merely had their value augmented in a BDC.

■ Neither of these statements, nor any others expressed in the legislative history of the statute, displays a clearly expressed legislative intention contrary to the literal terms of the statute. Accordingly, the plain meaning is to be given effect, and we hold that an article need not be a "growth, product, or manufacture" of a BDC to qualify for duty-free treatment. To the extent that 19 C.F.R. § 10.176(a) imposes this requirement, it is inconsistent with the statute and is therefore invalid. *E.g., K Mart Corp. v. Cartier, Inc.,* ——

U.S. ——, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988); *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1425, 7 USPQ2d 1152, 1154 (Fed. Cir.1988).

### III

Finally, the government argues that Congress has enacted, in two other areas, legislation indicating that Congress desired to require that goods be products of a BDC in order to qualify for duty-free treatment. First, the government relies on the following statement made during enactment of the Caribean Basin Initiative ("CBI"), Pub. L. No. 98–67, 97 Stat. 384 (codified at 19 U.S.C. §§ 2701–2706), subsequent to enactment of the statute at issue in this case:

Section 103(a) expressly defines rules of origin and conforms them to the GSP system * * * Paragraph (1) requires that the article be the "growth, product, or manufacture of a beneficiary country" in order to ensure that such articles originate in the beneficiary country. This language was not included in the GSP legislation, but was understood in this manner and has been consistently so interpreted.

Paragraph (2) requires * * * [that the Secretary's] regulations must provide that articles eligible for duty-free treatment "must be wholly the growth, product, or manufacture of a beneficiary country, or must be a new or different article of commerce which has been grown, produced, or manufactured in the beneficiary country."

H.R.Rep. No. 266, 98th Cong., 1st Sess. 13, *reprinted in* 1983 U.S.Code Cong. & Admin.News 635, 643, 654.

■ These statements are clearly contrary to our interpretation of section 2463(b), and see above as to how consistent interpretation by others has really been. Since Congress thought it necessary in the CBI law, 19 U.S.C. § 2703(a), to specify that an "eligible article" had to be "growth, product, or manufacture" of a beneficiary country, it must have thought it had left an ambiguity at any rate, in the BDC law which did not so specify. However, a law may be amended, superseded,

or rescinded by another law, but not by subsequent legislative history. *Aparacor, Inc. v. United States*, 571 F.2d 552, 215 Ct.Cl. 596 (1978); *Colorado Nurses Ass'n v. Federal Labor Relations Authority*, 851 F.2d 1486, 1490 (D.C.Cir.1988). It is the function of the courts and not the Legislature, much less a committee of one House of the Legislature, to say what a previously enacted statute means. *Pierce v. Underwood*, —— U.S. ——, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988). We are not willing to fix the meaning of the statute according to the views of a later reporting committee that did not draft the statute.

We may take judicial notice that the kind of statement by a congressional committee quoted above usually results from information or drafting assistance furnished by the executive agency directly concerned. That it did so here is expressed at page 12 of the cited report, 653 of the U.S.Code Cong. & Admin.News. When such is the case, the committee's statement adds but little to the weight the executive position already held if properly published and made known. Congress notices court decisions if there are any; otherwise, laws passed by prior Congresses mean to Congress what the Executive Branch says they mean, or such is the way many a committee report is drafted. As we are here writing on a pretty clean slate, so far as court decisions are concerned, it is evident the quoted statement did not result from perusal of court decisions.

■ Next, the government suggests that the trial court's interpretation of section 2463(b) is inconsistent with the country of origin marking requirements, 19 U.S.C. § 1304. According to the interpretation accepted by the trial court, the marking laws would allow the porcelainware in this case to be imported duty-free from Hong Kong, but to be marked "Made in Taiwan." The government suggests that this result is contrary to both the purposes of the GSP program and the statutory marking requirement. It is a mere hypothetical in this case, as we are informed the goods were in fact marked "Made in Hong Kong."

The purpose of the GSP program is, *inter alia*, "to extend preferential tariff treatment to the exports of less-developed countries to encourage economic diversification and export development within the developing world." S.Rep. No. 1298, 93d Cong., 2d Sess. pt. III, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7186, 7187; *see also Superior Wire v. United States*, 867 F.2d 1409, 1413 (Fed.Cir.1989); *Torrington Co. v. United States*, 764 F.2d 1563, 1571, 3 Fed.Cir. (T) 158, 167 (Fed.Cir. 1985). The purpose of the marking laws "is to mark the goods so that at the time of purchase the ultimate purchaser may, by knowing where the goods were produced, be able to buy or refuse to buy them, if such marking should influence his will." *United States v. Friedlaender & Co.*, 27 CCPA 297, 302 (1940).

The purchaser of Madison's goods would know that the porcelainware was made in Taiwan (if so marked), and he may refuse to buy the product if this fact influences him. At the same time, the duty-free entry of the merchandise encourages economic development in Hong Kong, in keeping with the objectives of the GSP program, notwithstanding the fact (if it be a fact) that the products are marked "Made in Taiwan." If the additional processing in Hong Kong is so significant that the goods are substantially transformed, then the goods will be marked "Made in Hong Kong," and the purchaser may refuse to buy them if he disfavors Hong Kong products. But where the goods are merely processed in, but are not the "growth, product, or manufacture" of Hong Kong, as with some of the products here, Congress has not clearly expressed that the ultimate purchaser needs to know the identity of every country in which the product stopped before being imported directly from a BDC into the United States. In the absence of such an expression, we do not see our interpretation of the duty-free eligibility statute as inconsistent with the marking laws.

It would be neat and nice for the customs laws and regulations to be uniform and consistent wherever it makes a difference

which is regarded as the originating country, as to any product of the sequential efforts of two or more. As of right now, it would be support of a lost cause, and an abuse of the judicial process, to skew the result in any single type of situation to achieve an unattainable uniformity with the result in so many other and different situations. If Congress wants uniformity, let it so enact. In this instance, we think the Customs Service forgot the "plain language" doctrine in order to pursue an unattainable goal, and overlooked the manifest intent of Congress to draw a "bright line," in the GSP situation. The uncertainty and litigation that have flowed from the "growth, product, or manufacture" standard have notoriously been great; Congress and its draftsmen had ample reason to shift the focus to something else.

In sum, the legislative history of the statute and the other factors we have considered do not reveal a clearly expressed intention contrary to the plain language of the statute. Therefore, we interpret the statute according to its literal terms.

### Conclusion

The judgment of the Court of International Trade holding that 19 U.S.C. § 2463(b) does not require an eligible article to be the "growth, product, or manufacture" of a BDC is affirmed.

AFFIRMED.